COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


PERDUE FARMS, INC.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3191-03-1                      JUDGE LARRY G. ELDER
                                                    JUNE 29, 2004
ROBERT S. THOMAS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Jennifer Tatum Atkinson (Robert A. Rapaport; Clarke, Dolph,
        Rapaport, Hardy & Hull, P.L.C., on brief), for appellant.

        No brief or argument for appellee.


        Perdue Farms, Inc., (employer) appeals a decision of the Workers' Compensation

Commission holding that the carpal tunnel syndrome of former employee Robert S. Thomas

(claimant) was causally related to his compensable injury by accident of August 1, 2000.  On

appeal, employer contends no credible evidence supports the commission's conclusion on the

issue of causation.[1]  We hold credible evidence in the record supports the conclusion that

claimant's bilateral carpal tunnel syndrome was causally related to his compensable industrial

injury.  Thus, we affirm the commission's award of medical benefits.

        "Causation is an essential element which must be proven by a claimant in order to receive

an award for an injury by accident."  AMP, Inc. v. Ruebush, 10 Va. App. 270, 274, 391 S.E.2d

879, 881 (1990).  The commission's determination regarding causation is a finding of fact.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The commission also denied claimant's request for disability compensation for various
dates.  That ruling is not before us in this appeal.

Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993); see also Dep't of Corr. v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986) (noting "[a] question raised by conflicting medical opinion is a question of fact"). On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). If there is evidence or *reasonable inferences* that can be drawn from the evidence to support the commission's findings, they will not be disturbed on appeal, even though there is evidence in the record to support a contrary finding. See Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see also Code § 65.2-706(A); Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). Thus, unless we can say as a matter of law that claimant's evidence failed to sustain his burden of proving causation, the commission's findings are binding and conclusive upon us. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

"'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.'" Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991)). A claimant is not required to produce a physician's medical opinion in order to establish causation. Id. at 176-77, 468 S.E.2d at 154-55. Causation of a condition may be proved by either direct or circumstantial evidence, including medical evidence or "[t]he testimony of a claimant." Id. at 176, 468 S.E.2d at 154. "[W]here the diagnosis is clear but the medical evidence does not provide a sufficient causal link between the ailment and the employment, the commission may rely on the testimony of the claimant to establish this link." Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 378 (2002) (involving

proof that carpal tunnel syndrome resulted from occupational disease rather than injury by accident).

Here, the medical evidence, combined with claimant's statements and testimony, constituted credible evidence supporting the commission's finding that claimant's carpal tunnel syndrome (CTS) was caused by his industrial accident of August 1, 2000. Claimant reported to Dr. Robert Brill, an orthopedic surgeon, that he had not had "any . . . problems [with] his hands" prior to the accident, and the commission was entitled to accept claimant's statement as credible. Further, on examination, Dr. Brill "did not detect any signs of [claimant's] having any previous injury or degeneration." Claimant testified that when his hands became trapped in the heat-sealing machine he was operating, the machine both crushed his hands and pulled his right shoulder and right arm forward. In addition, his hands were trapped for "a number of minutes" until his co-workers were able to free them "us[ing] crowbars." When claimant sought treatment for his hands at the Shore Memorial Hospital Emergency Room, medical personnel described his injury as a crush injury to both hands with bilateral pain, "tight[ness]," "tender[ness]," "limited movement" and "some swelling," "worse on left hand." Concerns over the degree of injury were such that an x-ray of claimant's right hand was obtained, although it revealed no deformities.

When claimant sought additional emergency room treatment four days later, he complained of pain and numbness in his dominant right hand, and after another negative x-ray, he was discharged with a diagnosis of right hand sprain and told to follow up with a hand surgeon. When claimant saw Dr. Dean two weeks after the accident, Dean noted claimant's hands were "slightly bluish/bruised appearing," and claimant reported it "'doesn't feel right.'" When claimant began physical therapy on August 21, 2000, the therapist noted positive Tinel's signs in both wrists. Claimant reported "pain and numbness in both hands," and these complaints continued throughout his eight-week course of therapy.

When Dr. Heather Stark saw claimant on September 14, 2000, she noted the history of claimant's injury as a crush injury to his hands that occurred when a "machine . . . clamped down on [them]." She, too, detected positive Tinel's signs bilaterally and noted claimant was scheduled for a nerve conduction study. After obtaining the results of that study, Dr. Stark noted she had seen claimant for his "bilateral carpal *injury* & crush injury." (Emphasis added). When Dr. Stark referred claimant to Dr. Stuart Mackler, a physician specializing in hand surgery, she noted "Problem Moderate bilateral carpal tunnel," indicated claimant "had a crush injury to both wrists at work," and included a copy of his nerve conduction study. As the deputy commissioner acknowledged in general terms, Dr. Stark's statements in claimant's medical records permitted (1) the inference that claimant's carpal tunnel problems stemmed from a particular injury rather than a repetitive trauma and (2) the inference that the carpal tunnel injury and crush injury occurred simultaneously. On review, the commission found that both inferences were supported by the evidence and were reasonable. These inferences, coupled with claimant's statement to Dr. Brill that he had no previous "problems [with] his hands" and Dr. Brill's determination on examination that claimant exhibited no "signs of . . . previous injury or degeneration," provided sufficient evidence, when viewed in the light most favorable to claimant, to support the commission's determination as to causation.

Dr. Brill's opinion that claimant's CTS was causally unrelated to his compensable industrial injury does not require a different result. The commission determines the credibility of the witnesses, and "[a] question raised by conflicting medical opinion is a question of fact," Dep't of Corr. v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). Dr. Brill examined claimant on only one occasion, over ten months after the accident at issue. Further, he demonstrated significant uncertainty as to the date on which the accident occurred and how serious claimant's injuries were. Although Dr. Brill opined that claimant's accident could not

- 4 -

have caused "sufficient injury to the median nerve" to produce his bilateral CTS, Dr. Brill also noted "[t]here were very few records provided that would give . . . an indication of exactly how much of an injury [claimant] had." Dr. Brill also noted "[h]e would be most happy to review other records, if they are provided," because "[t]hey would certainly be of benefit in trying to determine from the treating physicians if they felt there was any significant crush injury at the time of their initial treatment." Dr. Brill did not dispute the CTS diagnosis. Furthermore, as the commission expressly noted,

> the record reflects that the claimant received more than "casual" medical treatment following his workplace accident. In addition to receiving treatment at the emergency rooms of two hospitals and treatment from Drs. Dean, Stark and Mackler, the claimant received regular physical therapy at Shore Rehabilitative Services for a period of eight weeks.

The commission was free, as it did, to reject the opinion of Dr. Brill and to credit the evidence from claimant and his treating physicians. That evidence, viewed in the light most favorable to claimant, was sufficient to meet claimant's burden of proving causation by a preponderance of the evidence.

For these reasons, we hold credible evidence in the record supports the conclusion that claimant's bilateral carpal tunnel syndrome was causally related to his compensable industrial injury. Thus, we affirm the commission's award of medical benefits.

Affirmed.