COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Elder and Bumgardner
Argued at Richmond, Virginia


PETERSBURG (CITY OF) FIRE & RESCUE AND
  VIRGINIA MUNICIPAL GROUP
  SELF-INSURANCE ASSOCIATION

                                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0328-04-2               JUDGE LARRY G. ELDER
                                                   OCTOBER 5, 2004

BARRY WAYNE WELLS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

      Ralph L. Whitt, Jr. (Michael P. Del Bueno; Whitt & Associates, on
      briefs), for appellants.

      Jean M. McKeen (Fitzgerald, Tomlin & McKeen, PLLC, on brief),
      for appellee.


      The City of Petersburg Fire & Rescue and Virginia Municipal Group Self-Insurance

Association (employer) appeal from a decision of the Workers' Compensation Commission

awarding benefits to Barry Wayne Wells (claimant) for the occupational disease of

post-traumatic stress disorder (PTSD). Employer contends no credible evidence establishes that

claimant had PTSD. In the alternative, it argues no evidence proved that his PTSD was a disease

as opposed to an injury by accident or that it was caused by his employment. We hold credible

evidence supported the commission's findings, and we affirm the award of benefits.

I.

      Guided by well-established principles, we construe the evidence in the light most

favorable to the party prevailing below, claimant in this instance. Crisp v. Brown's Tysons

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see Code § 65.2-706. In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

The commission's determination regarding causation is a finding of fact. Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). A finding of causation need not be based exclusively on medical evidence. Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996). "The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive." Id.; see also Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 378 (2002). Unless we can say as a matter of law that claimant failed to sustain his burden of proving causation, the commission's findings are binding and conclusive upon us. Marcus, 15 Va. App. at 551, 425 S.E.2d at 530; Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

## A.

## CREDIBLE EVIDENCE OF PTSD

Employer contends first that the record contains no credible evidence to establish claimant had PTSD. Employer acknowledges claimant was diagnosed with PTSD. However, employer argues that claimant's reports to health care providers regarding his symptoms were

inconsistent and that these inconsistencies call the diagnosis into doubt. We hold credible evidence supports the PTSD diagnosis.

Three of the four health care providers who treated claimant for his condition opined that he suffered from PTSD. Gary Gaulin, L.P.C., formulated a diagnosis of PTSD when he first saw claimant on November 12, 2001. When claimant was referred to Dr. Richard Bowers, a licensed clinical psychologist, for confirmation of this diagnosis in February 2002, Bowers interviewed claimant, performed a battery of tests, and "confirm[ed] the diagnosis," writing "it is fair to characterize [claimant's 'symptoms of depression, anxiety, and intrusive thoughts'] as PTSD." Dr. James Wooldridge, the psychiatrist who monitored claimant's medication, subsequently agreed with Dr. Bowers's diagnosis, writing that claimant's "depression, anxiety, [and] sleep problems [are] best described at this point with a [diagnosis of] Post Traumatic Stress Disorder" that is "chronic."

The fact that claimant never told Barbara Cabrinha, L.P.C., or Chief James Wallace about his nightmares and flashbacks and did not tell Counselor Gaulin and Dr. Wooldridge about them until after he had met with each of them several times does not compel a different result. Claimant testified that he did not tell Cabrinha, the employee assistance program counselor with whom he had only four sessions, about his work-related nightmares because he did not feel comfortable with her or because he simply was not ready to discuss them. Both claimant's testimony and the opinions of his physicians, viewed in the light most favorable to claimant, established that the work incidents about which claimant had flashbacks and nightmares were traumatic to him, and Dr. Wooldridge noted that claimant "tries to avoid talking about these episodes." Thus, claimant's testimony and medical records provided credible evidence to support the commission's implicit finding that claimant suffered from PTSD, despite claimant's delayed reporting of some of his symptoms.

B.

CREDIBLE EVIDENCE THAT CLAIMANT'S PTSD WAS
A DISEASE UNDER THE ACT

Employer contends next that claimant failed to prove his condition was a disease as that

term is defined in the Act. It also contends he failed to prove it was not an injury by accident,

another necessary component to proving his entitlement to compensability of the condition as a

disease under the Act. We hold the Court's decision in Fairfax County Fire & Rescue Dep't v.

Mottram, 263 Va. 365, 559 S.E.2d 698 (2002), aff'g in part and rev'g in part 35 Va. App. 85,

542 S.E.2d 811 (2001), stands for the proposition that an ailment diagnosed as PTSD may be

classified as either a disease or an injury by accident under the Act, depending on the facts of

each case, but that if a claimant proves the ailment did not occur as a result of a specific injury,

the commission may, without further proof, infer that it is a disease under the Act, absent

evidence to the contrary.

"[W]hether a claimant suffers from a disease within the contemplation of the Act is a

mixed question of law and fact, and whether a proper definition has been used to test the

authenticity of a doctor's opinion is strictly a legal one." Stenrich Group v. Jemmott, 251 Va.

186, 198, 467 S.E.2d 795, 801 (1996).

"PTSD may be compensable as an 'injury by accident' or as an 'occupational disease,'

depending on how it develops." Mottram, 35 Va. App. at 93, 542 S.E.2d at 814; see also

Mottram, 263 Va. at 375, 559 S.E.2d at 703.

> "A disease is a condition which may arise from any number of
> causes, including trauma, that impairs the function of the body or
> any part thereof. . . . The distinction between injury and disease
> lies in the 'obvious sudden mechanical or structural' aspect of
> injury." Ogden Aviation Serv[s.] v. Saghy, 32 Va. App. 89, 97,
> 526 S.E.2d 756, 760 (2000) (citation omitted)[; see also] 1B Arthur
> Larson, The Law of Workers' Compensation § 41.31, at 7-491 to
> 7-492 (1991) (noting that the traditional distinction between
> "occupational diseases" and "accidental injuries" was "both the

- 4 -

> fact that [diseases] could not honestly be said to be unexpected, since they were recognized as inherent hazard[s] of continued exposure to conditions of the particular employment, and the fact that [diseases] were gradual rather than sudden in onset").

> \* \* \* \* \* \* \*

> Although, when based upon a single physical injury or obvious sudden shock or fright, PTSD may be considered an injury by accident, *when it is suffered as a result of ongoing stress, it qualifies as a disease*.

Mottram, 35 Va. App. at 92-96, 542 S.E.2d at 814-15 (emphasis added). This was so, we concluded, because the disorder was "the body's response to irritating stimuli" rather than a "physical impairment based on cumulative trauma resulting from repetitive motion." Id. at 95, 542 S.E.2d at 815.

We held under this definition that, once the commission "identified Mottram's condition as resulting from multiple stressful events," it "erred in designating [the PTSD] an injury and in refusing to consider it as a disease." Id. at 96, 542 S.E.2d at 815. The Supreme Court agreed with our rationale, holding generally that "PTSD qualifies as a disease" when incurred from "repeated exposure to traumatic stressors[,] which caus[es] reactions in [the individual's] neurobiological systems." Mottram, 263 Va. at 373, 559 S.E.2d at 702. Because "credible evidence establishe[d] that Mottram's repeated exposure to traumatic stressors caused reactions in his neurobiological systems" that were "'related to many of the chronic symptoms of PTSD,'" the Court affirmed the commission's finding that Mottram's PTSD was a disease. Id.

We hold this same rationale applies to claimant's PTSD and, thus, credible evidence supports the commission's conclusion that it, too, is a disease under the Act. The reasonable inference, absent evidence to the contrary, is that the psychological and psychiatric medical professionals who treated claimant--Drs. Bowers and Wooldridge and Counselor Gaulin--used the term PTSD in claimant's case in a manner consistent with the standard medical definition of

this term. Further, the commission concluded in Mottram that PTSD, under its standard medical definition, meets the definition of a disease under the Act. Thus, the commission was entitled to infer that claimant's PTSD, if not incurred via an injury by accident, was the same disease that the Court found covered by the Act in Mottram, even without additional medical evidence as to the nature of PTSD generally or claimant's PTSD in particular.

In sum, the holding in Mottram was sufficient to establish that PTSD qualifies as a disease under the Act as long as it is not incurred via an injury by accident. Thus, we proceed to analyze whether credible evidence proves claimant's PTSD was not an injury by accident.

C.

CREDIBLE EVIDENCE OF OCCUPATIONAL DISEASE
VERSUS INJURY BY ACCIDENT

PTSD "may be considered an injury by accident" when it is "based upon a single physical injury or obvious sudden shock or fright." Mottram, 35 Va. App. at 96, 542 S.E.2d at 815. In contrast, when PTSD "is suffered as a result of" "multiple stressful events" or "ongoing stress, it qualifies as a disease." Id. The Virginia Supreme Court concluded in Mottram, based on medical literature introduced in that case, that PTSD from "repeated exposure to traumatic stressors cause[s] reactions in [an individual's] neurobiological systems" and, thus, qualifies as a disease rather than a noncompensable cumulative trauma injury. 263 Va. at 372-73, 559 S.E.2d at 702 (citing A New Leaf, Inc. v. Webb, 257 Va. 190, 197-98, 511 S.E.2d 102, 105 (1999)). Absent some medical evidence in this record to the contrary, we follow the Supreme Court's pronouncement that the medically recognized condition of PTSD qualifies as a disease under the Workers' Compensation Act. We conclude credible evidence supports the commission's finding that claimant's PTSD resulted from ongoing stress and, thus, also qualified as a disease.

Here, claimant both told his treating physicians and testified before the deputy commissioner that, although he had nightmares and flashbacks about three particular calls to

- 6 -

which he responded in the line of duty three to five years before the onset of his symptoms, he was not bothered by these or any other calls at the time. Further, he could not think of any specific incident in 2001 that might have triggered his symptoms. Even after claimant told Gaulin and Wooldridge about these three specific calls, they each opined that claimant's PTSD was caused by ongoing job stress rather than a particular incident or incidents.

Gaulin noted in January 2002 that claimant had reported dreaming about specific calls to which he had responded and that he and claimant discussed the "difficulty of some calls" and the "impact of 1 call in particular." With this knowledge, Gaulin opined that claimant had "[n]o specific job stressor, rather a combination of numerous stressors over the years . . . related to specific emotionally charged calls [claimant] responded to." On a disability certificate, Gaulin opined that claimant's PTSD was "associated with and caused by a long history of job stress."

Dr. Wooldridge noted in August 2002 that claimant, "[a]s a firefighter-EMS person, . . . had exposure to many traumatic events such as car accidents, burned [and] disfigured people (dead and alive), debilitated elderly people in institutions, deaths of infants [and] full term pregnant women." Dr. Wooldridge opined that "[t]hese traumatic episodes," together, "triggered a response of helplessness[,] utter horror [and other symptoms] in this [patient]." Dr. Wooldridge diagnosed these symptoms as chronic PTSD.

Although Dr. Bowers's opinion was less clear than Gaulin's and Wooldridge's, it also supports a finding that claimant's PTSD was caused by a disease process rather than an injury by accident. Dr. Bowers noted in February 2002 that claimant reported to him two specific incidents about which he had flashbacks but that claimant seemed to have no triggers for his PTSD symptoms "[o]ther than being in the firehouse." Dr. Bowers opined that "a number of disturbing things" claimant "obviously saw . . . in his firefighting career" caused his PTSD.

Thus, credible evidence supports the finding that claimant's PTSD resulted from a disease rather than an injury by accident.

D.

CREDIBLE EVIDENCE THAT DISEASE WAS OCCUPATIONAL DISEASE RATHER THAN NON-COMPENSABLE ORDINARY DISEASE OF LIFE

For a condition that qualifies as a disease under the Act to be compensable, a claimant "must show either that [the disease] is an occupational disease under the provisions of Code § 65.2-400 or that it is an ordinary disease of life that may be treated as an occupational disease pursuant to Code § 65.2-401." Mottram, 263 Va. at 373-74, 559 S.E.2d at 702. "[T]he question whether a condition or disease is an ordinary disease of life [or an occupational disease] is essentially a medical issue to be decided by the trier of fact based on the evidence presented." Knott v. Blue Bell, Inc., 7 Va. App. 335, 338, 373 S.E.2d 481, 483 (1988), quoted with approval in Mottram, 263 Va. at 375, 559 S.E.2d at 703.

> The term "occupational disease" is defined as "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." Code § 65.2-400(A). The following six factors are necessary in order to establish that a disease arose out of the employment:
>
> 1. A direct causal connection between the conditions under which work is performed and the occupational disease;
>
> 2. It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
>
> 3. It can be fairly traced to the employment as the proximate cause;
>
> 4. It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;

- 8 -

5. It is incidental to the character of the business and not independent of the relation of employer and employee; and

6. It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

Code § 65.2-400(B). An ordinary disease of life may be treated as an occupational disease if it is "established by clear and convincing evidence" that it "arose out of and in the course of employment . . . and did not result from causes outside of the employment," and that "[i]t follows as an incident of occupational disease" or "[i]t is characteristic of the employment and was caused by conditions peculiar to such employment." Code § 65.2-401.

Mottram, 263 Va. at 373-74, 559 S.E.2d at 702-03.

"PTSD is, in some situations, an ordinary disease of life[,]" such as when an "employee had numerous sources of stress outside of the employment that contributed to his condition." Mottram, 263 Va. at 375, 559 S.E.2d at 703 (citing Teasley v. Montgomery Ward & Co., 14 Va. App. 45, 49-50, 415 S.E.2d 596, 598-99 (1992)). However, where credible medical evidence establishes that an employee's PTSD is "intimately related to his service-connected activities" and "no evidence [indicates] that [the employee] was exposed to traumatic events outside his employment," we must affirm the commission's conclusion that the PTSD is an occupational disease under Code § 65.2-400. See id.

In Mottram, the employer

contend[ed] that PTSD can be caused by exposure to traumatic events found in everyday life, such as violent personal assaults, severe automobile accidents, or being diagnosed with a life threatening illness. However, the Employer acknowledge[d] that, of the six statutory factors required to establish an occupational disease, only number four [was] at issue in [that] appeal, whether PTSD is a disease to which Mottram may have had substantial exposure outside of his employment.

Id. at 374-75, 559 S.E.2d at 703. The Supreme Court then reasoned that,

- 9 -

> [c]ontrary to the Employer's argument, the focus is not on the many causes of PTSD and whether some of them may be found outside of an employment situation. Instead, the focus must be on the nature of the employee's occupation and the relationship between that occupation and the specific disease, as contrasted to diseases that are readily found in other occupations or ordinary life.

Id. at 375, 599 S.E.2d at 703. Because the medical evidence in Mottram "emphasized that Mottram's PTSD was 'intimately related to his service-connected activities'" and the record contained "no evidence that Mottram was exposed to traumatic events outside his employment," the Court "conclude[d], as a matter of law, that Mottram's PTSD [was] an occupational disease under Code § 65.2-400." In doing so, the Court rejected our conclusion that Mottram's condition was an ordinary disease of life "[b]ecause PTSD is a condition that may develop from the general stresses of life and is not necessarily tied to occupational stress." Mottram, 35 Va. App. at 96, 542 S.E.2d at 816; see Mottram, 263 Va. at 376, 559 S.E.2d at 704.

In claimant's case, similar to Mottram's, the record contained (1) credible evidence establishing that claimant's PTSD was caused by his work-related exposure to traumatic events and (2) "no evidence that [claimant] was exposed to traumatic events outside his employment."[1] Counselor Gaulin and Drs. Wooldridge and Bowers all opined that the traumatic events to which claimant was exposed at work caused his PTSD. Gaulin opined claimant's PTSD was "caused by a long history of job stress." Dr. Bowers opined that "a number of disturbing things" claimant saw "in his firefighting career" caused the symptoms diagnosed as PTSD. Finally, Dr. Wooldridge opined that the "many traumatic events" claimant was exposed to "[a]s a firefighter-EMS person" caused his PTSD. From this evidence, the commission could

---

[1] In Mottram, the Supreme Court reached this conclusion *as a matter of law*. 263 Va. at 375, 559 S.E.2d at 703. In claimant's case, because the commission has already addressed this issue, at least implicitly, we need not consider whether the evidence supported such a ruling *as a matter of law*. We conclude only that credible evidence supported *the commission's finding* on this point.

- 10 -

reasonably conclude that claimant's PTSD was caused by his work-related exposure to traumatic events.

Additional credible evidence supported a finding that claimant experienced no causative events outside his employment that could have led to his PTSD. Claimant testified that the levels of stress he experienced in his everyday personal life and while at work were "[t]otally different" because, "at work[,] [he] was always under the stress of never knowing . . . what was going to happen five minutes from then[,] . . . never knowing what [he] was going to get into." Claimant's nightmares involved only work-related traumas, and claimant's symptoms were triggered or worsened by going to work at the firehouse, hearing the fire alarm, or "approach[ing] his former job sites." Claimant reported no family history of depression or panic disorder, and a full physical performed by his primary care physician eliminated any purely physical causes. Claimant told Chief Wallace that he had no family or financial problems "that could possibly create undue stress." Finally, claimant's condition improved when he made the decision to retire from his emergency services position and took employment as a delivery driver.

> Although statements from claimant's doctors that [his PTSD] did not result from any causes outside of the employment may have strengthened claimant's case, such statements were not critical to the commission's determination in light of claimant's own testimony [that he had little stress in his personal life and "medical evidence . . . that claimant's [PTSD] resulted from [work-related traumas] rather than from [family history] or from any other medical condition"]. See Cridlin, 22 Va. App. at 176-77, 468 S.E.2d at 154-55; see also Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988) (where physician could not state "'to a reasonable medical certainty' that [claimant's] hearing loss was not caused by non-employment factors" but said "[claimant] did not give me a history of anything [outside of work] I might interpret as having caused it," the commission "could and did draw the reasonable inference that [claimant's] hearing loss was not caused by non-employment factors based on his negative history of noise exposure which

would cause such a hearing loss and the nonexistence of genetic or biological factors").

Miller, 38 Va. App. at 264, 563 S.E.2d at 379-80.

Thus, the commission's conclusion is supported by (1) credible evidence establishing that claimant's PTSD was caused by his work-related exposure to traumatic events and (2) a lack of "evidence that [claimant] was exposed to traumatic events outside his employment."

II.

For these reasons, we hold credible evidence supports the commission's findings that claimant had PTSD, that his PTSD was a disease as opposed to an injury by accident, and that it was caused by his employment. Thus, we affirm the award of benefits.

Affirmed.