COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Raphael and Senior Judge Clements

ROSEMARY POLOZZI

MEMORANDUM OPINION*
v.      Record No. 0462-21-1                                    PER CURIAM
                                                        DECEMBER 7, 2021

VIRGINIA BEACH CITY PUBLIC SCHOOLS AND
 PMA MANAGEMENT CORPORATION

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Rosemary Polozzi, on brief), *pro se*.

(Robert L. Samuel; Bryan S. Peeples; Pender & Coward, P.C., on
brief), for appellees.


Claimant Rosemary Polozzi, *pro se*, appeals a final order of the Workers' Compensation

Commission denying her claims for medical benefits for confusion, anxiety, vision changes,

low-back injury, lower-extremity spasticity, hip and leg injuries, bilateral-shoulder injuries, and

bilateral-hand injuries. On appeal, claimant argues that the Commission erred in finding that her

claimed injuries had no causal connection to her compensable work accident.[1] In addition,

claimant argues that the Commission erred in finding her after-acquired evidence inadmissible

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Claimant filed an initial opening brief and appendix on July 16, 2021. On September 7, 2021, the Clerk's office advised claimant that her opening brief did not comply with Rules 5A:4 and 5A:20 and directed her to file an amended opening brief within ten days, or by September 17, 2021. The Clerk's letter also advised claimant that her amended brief "must not vary from that of the original pleading except as may be necessary to correct the deficiencies noted." Claimant transmitted her amended opening brief to this Court by priority mail on September 17, 2021, and this Court received it on September 20, 2021. Claimant requested an extension to file another amended opening brief on September 29, 2021, and then before receiving a ruling, she filed a second amended opening brief on October 6, 2021, which varied greatly from her previous filings. The Court denies claimant's motion and will not consider claimant's second amended opening brief.

on review. Lastly, she argues that the Commission erred in finding that her request for "monetary compensation" was not pending before it on review.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the Commission's denial of benefits. Rule 5A:27.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005)).

Claimant sustained a compensable injury by accident on February 13, 2017 when a "tray fell on her head" from a top shelf while she was employed as a "cafeteria assistant" for the employer. Claimant testified that the tray was metal, weighed approximately six pounds, and fell from a height of approximately "seven, seven-and-a-half feet." On impact, the tray pushed claimant's head back and then forward. Claimant "didn't really feel much of anything" immediately thereafter, and she was able to complete her shift. By the end of the day, however, she "knew something wasn't right" when she noticed she was struggling with basic math.

Medical records show that claimant presented at NowCare Medical Center the day after the accident for "an evaluation of a headache after getting hit on the head by a tray on the top shelf." She advised her doctor that she did "not feel like herself." Claimant denied losing consciousness, nausea or visual-acuity problems. On evaluation, her physician found that her neck was "supple, with full range of motion." Her initial diagnosis was "status post head injury" and "post-concussion syndrome."

Claimant returned to NowCare on February 15, 2017, reporting occasional head pain and difficulty doing math problems, and saying that she still "[did] not feel right." Her physician noted that a CT scan of her head "was normal." She was released to full-duty work and referred to a neurologist. No other complaints were noted during her initial visits at NowCare. Claimant later claimed that her doctor at NowCare omitted many of her reported complaints from the medical records, including complaints related to her hips, shoulders, and legs.

On March 8, 2017, claimant began treating with her neurologist and reported having headaches, cognitive issues, and neck stiffness. Claimant's neurologist noted that claimant's symptoms were "consistent with postconcussion [sic] syndrome, although her headaches [were] atypical." The results from claimant's EEG test were "normal," and her neurologist opined that there was "no electrical explanation for [claimant's] cognitive decline." An MRI of her brain was "unremarkable." Claimant's neurologist indicated that claimant's cognitive problems might be secondary to anxiety. Claimant had received medical treatment for anxiety dating back to 2014.

Claimant reported neck pain and locking in her shoulders when she returned to her neurologist on March 28, 2017. She also reported lower back pain, but "she [did] not think that the low back pain [was] related to her work-related injury." Claimant did not report any symptoms regarding her vision at that time.

An MRI of claimant's cervical spine, on May 11, 2017, demonstrated no traumatic changes.[2] At the accompanying office visit, claimant reported vision change for the first time since her work accident. She also complained of burning of the dorsal aspects of her hands. Her

_____

[2] Claimant testified at the hearing that she never received medical treatment for her cervical spine before the work accident, despite medical records to the contrary from as early as 2016.

- 3 -

neurologist commented that claimant had "multiple symptoms, most of which I cannot explain," diagnosing her with "a neck strain injury and posttraumatic headaches."

As for claimant's hips, an MRI report, dated August 22, 2017, noted her history of intermittent right-hip pain for seventeen years. The imaging demonstrated "protruisio acetabuli in the right hip" and "marginal osteophytes in both hip joints." On September 5, 2017, claimant's orthopedic physician also noted that claimant's right-hip pain had begun twenty-five years before and that she had severe hip arthritis, likely requiring arthroplasty. Claimant later admitted that she had had problems with her hips "for at least twenty-seven years" and that she had been previously diagnosed with right-hip arthritis.

On September 6, 2017, claimant returned to her neurologist for an electrodiagnostic study to address burning in the dorsal aspects of her hands. Based on that study, claimant's neurologist diagnosed her with bilateral carpal-tunnel entrapment. Later, in February 2018, claimant's neurologist indicated that he was "not sure why" her symptoms persisted. The neurologist also opined that it was "unclear how her initial injury may have resulted in [shoulder pain]." Claimant was referred to an orthopedist for further treatment.

On September 19, 2018, claimant's orthopedist noted that claimant began experiencing bilateral-shoulder pain "several months ago" and that there was "no known event" that caused her shoulder symptoms.

In October 2018, claimant began treating with a pain-management specialist for her complaints of persistent headaches following a traumatic brain injury "about one year ago." The pain management specialist did not note any complaints of vision loss, dizziness, memory loss, confusion, or anxiety. Claimant's ongoing diagnosis was "cervical paraspinous muscle spasm and post-concussion syndrome." Claimant continued treating with her pain-management

specialist through 2019 and received additional diagnoses of "bilateral occipital neuralgia," "myofascial pain syndrome," and "acetabular protrusion."

On July 2, 2020, an orthopedic surgeon evaluated claimant for bilateral-shoulder pain and opined that claimant's symptoms "are really most consistent with a cervical spine etiology."

In August 2020, claimant was seen by another orthopedist for an evaluation of her "neck pain, shoulder pain, lower back pain, and hip pain," which she said had not been present before her work injury. Based on his evaluation and review of claimant's medical history, the orthopedist opined that claimant sustained a head injury, but he could not "relate her cervical degenerative disc disease, lumbar degenerative disc disease, hip osteoarthritis, or shoulder impingement to the work injury." Claimant was told to follow up as needed.

At the evidentiary hearing on September 21, 2020, the employer stipulated that claimant suffered a compensable head injury requiring medical treatment, but it disputed any alleged ongoing disability as to claimant's "wrists, hands, arms, shoulders, cervical spine, post-concussion syndrome, bilateral occipital neuralgia, hips, legs, [and] eyes."

Upon review of the medical evidence in the record as well as claimant's testimony, the deputy commissioner found that claimant proved compensable "post-concussion disorder that resulted in headaches and an injury to the neck in the nature of cervical radiculopathy, cervical pain, and bilateral occipital neuralgia." But the evidence did not establish a causal connection between the work accident and claimant's confusion, anxiety, low-back condition, bilateral-shoulder conditions, extremity focal spasticity, hip condition, leg condition, changes in vision, or moderate bilateral carpal-tunnel entrapment.

Claimant timely submitted her request for review of that opinion to the Commission. Claimant subsequently submitted a "change of condition request," asking the Commission to consider the results of a right shoulder MRI that had not yet been performed. Claimant also

asked the Commission to consider the results of "upcoming" vision tests. Shortly thereafter, claimant asked the Commission to consider additional evidence regarding her lower extremity spasticity. Claimant also filed requests for the Commission to consider other medical records, and she asked the Commission to award her "monetary compensation."

The Commission affirmed the deputy commissioner's rulings. It agreed with the deputy commissioner's determination that there was not sufficient evidence in the record to show that claimant's confusion, anxiety, vision changes, low-back condition, leg and hip injuries, lower extremity spasticity, bilateral-shoulder conditions, or bilateral carpal-tunnel entrapment were causally related to the claimant's work accident. Further, the Commission found no basis to consider the additional evidence submitted by claimant after the evidentiary hearing. This appeal followed.

## ANALYSIS

On appeal, claimant argues that the Commission erred in finding that the medical claims it denied were not caused by her compensable work accident. She argues that the Commission erred by determining that claimant's after-acquired evidence was inadmissible. She also argues that the Commission erred by determining that her request for "monetary compensation" was not pending before the Commission on review.

The employer has moved to dismiss this appeal, arguing that claimant failed to articulate clear assignments of error in her amended opening brief or provide a clear reference showing where any claimed errors were preserved in the record. Employer also argues that claimant failed to discuss a standard of review in her amended opening brief. Assuming without deciding that claimant's procedural violations do not merit dismissal, the Court denies the employer's motion to dismiss and summarily affirms the Commission's ruling.

- 6 -

## A. Standard of Review

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" Jeffreys v. Uninsured Employer's Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis, 45 Va. App. at 83-84 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222 (1988)). "The scope of a judicial review of the fact finding function of [the] workers' compensation commission . . . is 'severely limited, partly in deference to the agency's expertise in a specialized field.'" Roske v. Culbertson Co., 62 Va. App. 512, 517 (2013) (quoting Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." Id. (quoting Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 430 (2007)).

## B. Causation

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below." Hess v. Virginia State Police, 68 Va. App. 190, 194 (2017) (quoting Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 508 (2014)). As the appellant in this case, claimant bears the "burden of showing" that the Commission committed "reversible error." See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012). Claimant had the burden to prove, by a preponderance of the evidence, "a causal connection between the work-related incident" and the injury. Hoffman v. Carter, 50 Va. App. 199, 214 (2007).

The Commission's determination of causation is a finding of fact. Lee Cnty Sch. Bd. v. Miller, 38 Va. App. 253, 260 (2002). "[F]actual findings of the [C]ommission will not be disturbed if based on credible evidence." Id. (quoting Anthony v. Fairfax Cnty. Dep't of Fam. Servs., 36 Va. App. 98, 103 (2001)). In determining whether credible evidence exists to support the Commission's findings of fact, "the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75 (2005) (quoting Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)). "[U]nlike the Commission, the reviewing court is not charged with determining anew whether the . . . evidence of causation should be accorded sufficient weight to constitute a preponderance of the evidence on that issue." Bass v. City of Richmond Police Dep't, 258 Va. 103, 115 (1999). "Causation is usually proven by medical evidence." Clinch Valley Med. Ctr. v. Hayes, 34 Va. App. 183, 192 (2000).

We disagree with claimant's argument that the Commission erred in finding no causal connection between her work accident and her confusion, anxiety, vision changes, low-back condition, leg and hip injuries, lower extremity spasticity, bilateral-shoulder conditions, or bilateral carpal-tunnel entrapment. First, as the Commission noted upon review of the entirety of the record, there is no evidence relating claimant's anxiety or confusion to her 2017 work accident. Claimant received medical treatment and was prescribed medication for anxiety as early as 2014.

Moreover, claimant's neurologist never provided an opinion relating her confusion to the work accident, indicating instead that claimant's cognitive problems might be secondary to anxiety. After reviewing claimant's EEG results, claimant's neurologist determined that the EEG results were "normal," and opined that there was "no electrical explanation for [claimant's] cognitive decline." Claimant's neurologist also concluded that an MRI of claimant's brain was

- 8 -

"unremarkable." Given the lack of evidence directly relating claimant's confusion and anxiety to the work accident, we find that the Commission did not err in denying medical benefits for those claims.

In addition, the Commission did not err in concluding that claimant's vision changes were not caused by the work accident. Claimant did not report any vision symptoms in the weeks immediately following the work accident. It was not until May 11, 2017—nearly three months following the accident—that claimant first reported vision changes. Even then, claimant's neurologist noted that claimant had "multiple symptoms," most of which could not be explained. Claimant's ongoing diagnosis was limited to only "a neck strain injury and posttraumatic headaches." We therefore find no error in the Commission's finding.

The Commission also did not err in finding no causal connection between the work accident and claimant's low-back pain. When claimant first reported low-back pain to her doctor on March 28, 2017, the record reflects that even claimant "[did] not think that the low back pain [was] related to her work-related injury." The Commission also relied on medical records documenting claimant's lower-back issues beginning as early as 1993. More recently, in August 2020, claimant's orthopedist was unable to relate claimant's lumbar degenerative-disc disease to her work accident.

The record also supports the Commission's determination that claimant's leg and hip injuries, including her lower-extremity spasticity, were not causally connected to the work accident. Claimant admitted during the evidentiary hearing that she had had problems with her hips "for at least twenty-seven years" and that she had been diagnosed with arthritis in her right hip before the work accident. On September 5, 2017, claimant's physician noted that claimant's right-hip pain began twenty-five years ago and that she had severe hip arthritis likely requiring arthroplasty. In August 2020, claimant's orthopedist was unable to relate her "hip osteoarthritis"

- 9 -

to the work accident. Thus, the Commission correctly determined that there was no medical evidence relating claimant's hip complaints and extremity focal spasticity to her work injury.

The Commission likewise did not err in finding that claimant failed to connect her bilateral-shoulder condition to the work injury. Claimant testified at the evidentiary hearing that her "shoulders started popping and started giving [her] a lot of problems in a couple of days following [the accident]." She informed her neurologist for the first time on March 28, 2017 that her shoulders would "lock up occasionally." Her neurologist noted, however, that it was unclear how her work injury resulted in the shoulder pain she was experiencing. Claimant was referred to an orthopedist, who noted on September 19, 2018, that claimant began experiencing bilateral-shoulder pain "several months ago" but that there was "no known event" that caused her symptoms. An orthopedist evaluated claimant for bilateral-shoulder pain on July 2, 2020, and opined that claimant's symptoms were "really most consistent with a cervical spine etiology." Another orthopedist examined the claimant in August 2020 and was also unable to relate claimant's "shoulder impingement" to the work injury.

Lastly, we find that the Commission did not err in finding no causal connection between the work accident and claimant's bilateral carpal-tunnel entrapment. Claimant's neurologist diagnosed bilateral carpal-tunnel entrapment on September 6, 2017, following an electrodiagnostic study and claimant's reports of burning in the dorsal aspects of her hands. But claimant's neurologist later indicated that he was "not sure why she has perpetuation of . . . symptoms." The Commission correctly noted that no medical provider has related claimant's diagnosis of bilateral carpal-entrapment to the work injury.

In sum, we find no error in the Commission's conclusion that claimant failed to prove that her various medical conditions were causally related to the work injury.

C. Admissibility of Additional Evidence

We find no error in the Commission's ruling that claimant's after-acquired evidence was inadmissible.

Rule 2.2(A) of the Rules of the Virginia Workers' Compensation Commission requires parties to be prepared to present evidence to support a claim at the time and place set for hearing. Rule 3.3 provides that the Commission will consider post-hearing evidence only when "absolutely necessary and advisable" using the same rules used by trial courts.

The Commission has the authority to interpret and enforce its rules. See Arellano v. Pam E. K's Donuts Shop, 26 Va. App. 478, 482-83 (1998). When challenged on appeal, the Commission's interpretation of its rules "will be accorded great deference and will not be set aside unless arbitrary or capricious." Estate of Kiser v. Pulaski Furniture Co., 41 Va. App. 293, 299 (2003) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129 n.2 (1999)). As the party seeking to reopen the record on the basis of after-discovered evidence, claimant bore the burden of proving that:

> (1) the evidence [was] discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral; and (4) it is material, and as such, should produce an opposite result from that contained in the commissioner's report.

Joynes v. Payne, 36 Va. App. 401, 418 (2001).

Following the hearing, claimant submitted several requests asking the Commission to consider the results of a right-shoulder MRI that had not yet been performed, the results of "upcoming" vision tests, and additional evidence about alleged lower-extremity spasticity.

As the Commission noted, claimant had ample opportunity to gather and present evidence to support her claims; she did not ask the deputy commissioner to keep the record open. The Commission also noted that, although claimant alleged she was unable to receive her

- 11 -

requested vision treatment until after the hearing, her physician "simply does not treat workers' compensation patients. As a result, she chose to seek treatment for her vision with another specialist, whose January 2019 treatment notes are part of the record."

Based on the entirety of the record, we find no error in the Commission's determination to exclude claimant's post-hearing evidence.

### D. Claimant's Request for "Monetary Compensation"

Finally, we find no merit in claimant's argument that the Commission erred by determining that her request for "monetary compensation" was not pending before it on review.

The claimant bears the burden of proving "disability and the periods of that disability." Hoffman, 50 Va. App. at 216 (quoting Marshall Erdman & Assocs. v. Loeher, 24 Va. App. 670, 679 (1997)). Under the contemporaneous-objection rule, "a litigant has the responsibility to afford [the Commission] the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review." Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411 (2003) (quoting Reid v. Baumgardner, 217 Va. 769, 773 (1977)); see also Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253 (2011). That rule exists to protect the tribunal below "from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal," to allow the tribunal to "rule intelligently, and to avoid unnecessary reversals and mistrials." Williams, 266 Va. at 411 (quoting Reid v. Boyle, 259 Va. 356, 372 (2000)).

As this Court has held repeatedly, claims that are "unsupported by argument, authority, or citations to the record do not permit appellate consideration." Cirrito v. Cirrito, 44 Va. App. 287, 302 n.7 (2004). Furthermore, although this Court will grant them a measure of leeway, "[e]ven pro se litigants must comply with the rules of court." Francis v. Francis, 30 Va. App. 584, 591 (1999). This Court will not "comb through the record . . . to ferret-out for ourselves the validity

of [appellant's] claims." Alwan v. Alwan, 70 Va. App. 599, 612 (2019) (quoting Burke, 59 Va. App. at 838).

Claimant was released to full duty on February 15, 2017 and had never been placed on light-duty work restrictions. Moreover, she agreed at the evidentiary hearing that she was "simply looking for an award for medical benefits" at that time. No claim for "compensation benefits" was heard or made part of the record before claimant appealed.

As a result, claimant's argument that she is entitled to "monetary compensation" is not supported by the evidence in the record, and she provides no legal basis for this Court to conclude otherwise. Accordingly, we find that the Commission did not err in denying her request.

CONCLUSION

For all these reasons, we summarily affirm the Commission's judgment. Rule 5A:27.

Affirmed.