COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


TEX TECH INDUSTRIES, INC. AND
  CHARTER OAK FIRE INSURANCE COMPANY

                                                            OPINION BY
v.        Record No. 0966-04-1                     JUDGE LARRY G. ELDER
                                                         DECEMBER 7, 2004
DARLENE ELLIS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              William C. Walker (Taylor & Walker, P.C., on brief), for appellants.

              T. Gregory Evans (Joynes & Gaidies Law Group, P.C., on brief), for
              appellee.


        Tex Tech Industries, Inc. and Charter Oak Fire Insurance Company (employer) appeal

from a decision of the Virginia Workers' Compensation Commission holding the carpal tunnel

syndrome (CTS) of Darlene Ellis (claimant) was caused by her work for employer.  On appeal,

employer contends claimant did not prove by clear and convincing evidence that her CTS,

defined as an ordinary disease of life in Code §§ 65.2-400 and -401, arose out of her employment

and did not result from causes outside the employment.  We hold credible evidence supported the

commission's findings, and we affirm.

                                                   I.

                                           BACKGROUND

        During the "whole year" 2000, claimant worked as a machine operator for employer,

primarily operating a machine called "the green machine."  The green machine "wraps and rolls

material off the machine.  You have to cut it, place it on the table, put tape on the bottom, cut it

evenly, stick an object on the bottom, place it in the bag, seal, box, and pack."  Claimant

explained that "a lot of times that material messes up, and you have to repeatedly smooth the material out a lot with your hand."

In November 2000, a knot developed on claimant's right hand, and while she was operating the green machine, her hand "started feeling numb." When asked if "there [was] anything that aggravated it," claimant indicated that "it [was] just the green machine that would make it worse," "[e]very time [she would] use it." She said, "[I]f I wasn't doing anything else, like if I was sitting somewhere else doing something else, my hand would be alright, but as soon as I [would] go to the green machine, that's when I started noticing the problem."

Claimant testified that she "had [never] had any problems like that with [her] right hand or wrist" prior to November 2000. She had not worked outside the home before being hired by employer. When questioned about household chores and other non-work-related activities, she denied being "involved in any activities outside of work where [she] constantly [made] the same motion."

Claimant's treating physicians diagnosed her with CTS and restricted her from operating the green machine or engaging in any other repetitive movements with her right hand. Claimant's CTS failed to resolve with conservative treatment, and claimant had a right carpal tunnel release, which alleviated her symptoms. Although none of claimant's treating physicians expressly opined in writing that claimant's CTS was caused by her work, claimant testified without objection that both her family physician and one of his associates told her that her CTS was caused by her work.

Claimant sought workers' compensation benefits, and employer disputed the compensability of claimant's CTS. Claimant's attorney then sought an opinion from David Lannik, an orthopaedic physician who had not been involved in claimant's treatment, regarding

- 2 -

the cause of claimant's CTS.  Dr. Lannik indicated he had "reviewed the medical records for the carpal tunnel that developed in 2000" but provided no indication that he ever examined claimant.

Dr. Lannik noted in 2003 that claimant "works as a textile cutter for a number of years which involve[s] cutting, taping, bagging and sealing type[s] of activities which involve repetitive vigorous use of the hands."  After recounting his review of claimant's medical records, Dr. Lannik opined as follows:

> With regards to the correlation between [claimant's] work activity and [CTS], at this time I believe the work activities as described with repetitive motion, particularly in the textile industry, was in fact the direct causal relation to her [CTS] problems.  The fact that her carpal tunnel symptoms resolved following surgery verifies the [CTS] diagnosis.

On a questionnaire presented to him by claimant's attorney, Dr. Lannik responded "YES," to each of the following six questions:

> 1.  Can you state with more probability than not that there is a direct causal connection between the conditions under which work was performed and the occupational disease including claimant's carpal tunnel syndrome?
>
> 2.  Can you state that her carpal tunnel syndrome disease followed as a natural incident of the work as a result of the exposure occasioned by the nature of his/her employment?
>
> 3.  Can his/her injury be reasonably traced to the employment as a proximate cause?
>
> 4.  In reviewing the attached history, can his/her injury's origin be considered a risk connected with the employment and type of work performed and to have flowed from that employment as a natural consequence?
>
> 5.  Can you state that it is a disease to which the employee did not have substantial exposure outside the employment (Please review the enclosed job description and description of outside activities)?
>
> 6.  Can you state that this injury would [sic] incidental to the character of the business and not independent of the relation of employer and employee (was his/her syndromes [sic] more than

likely a result of the type of work required by the employer, rather than the activities performed outside the scope of his/her employment?)

By a vote of 2 to 1, the commission awarded benefits, reasoning as follows:

Dr. Lannik's correlation between the claimant's textile position involving constant repetitive motion, and the resultant [CTS] goes well beyond a "bare assertion." Dr. Lannik pointed to the specific, repetitive, vigorous activities associated with the claimant's employment that caused the [CTS]. None of the treating physicians provided an opinion as to the cause of the claimant's disease, and Dr. Lannik offered a valid, uncontradicted medical opinion that is entitled to consideration. We find that Dr. Lannik stated with the requisite certainty that the claimant's carpal tunnel syndrome arose out of and in the course of her employment and that the disease was characteristic of her employment involving repetitive motion. . . .

. . . Although the language used by Dr. Lannik indicated only that the claimant did not have substantial exposure to carpal tunnel outside of her employment, "[w]e will not substitute form over substance by requiring a physician to use magic words . . . when the record is void of any evidence of non-employment factors responsible for [the condition]." Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988). The claimant stated that she did not perform activities outside of work that involved repetitive hand motion. There is no evidence in the record to indicate that she developed [CTS] as a result of factors outside of her employment. Accordingly, we find that the claimant has proven by clear and convincing [evidence] that the [CTS] was not caused by factors outside of her employment.

Employer noted this appeal.

II.

ANALYSIS

The Workers' Compensation Act (the Act) provides that carpal tunnel syndrome is an "ordinary disease[] of life as defined in [Code] § 65.2-401." Code § 65.2-400(C). For an ordinary disease of life to be compensable under § 65.2-401, a claimant must prove by "clear and convincing evidence, (not a mere probability)," that the disease (1) "arose out of and in the course of [her] employment as provided in Code § 65.2-400"; (2) "did not result from causes

- 4 -

outside of the employment"; and (3) "follows as an incident of occupational disease . . . [;] is an infectious or contagious disease contracted in the course of [specified types of employment]; or . . . is characteristic of the employment and was caused by conditions peculiar to such employment." Code § 65.2-401. Code § 65.2-400(B) provides that a disease arises out of the employment "if there is[, *inter alia*,] . . . [a] direct causal connection between the conditions under which work is performed and the occupational disease; . . . [and] [i]t can be fairly traced to the employment as the proximate cause . . . ."

Evidence is clear and convincing when it produces in the fact finder "'a firm belief or conviction as to the allegations sought to be established. It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.'" Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

The commission's determination regarding causation is a finding of fact. Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). A finding of causation need not be based exclusively on medical evidence, and *a claimant is not required to produce a physician's medical opinion in order to establish causation*. Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996). Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence *or* "the testimony of a claimant." Id. at 176, 468 S.E.2d at 154; see Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 378 (2002).

In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890,

894, 407 S.E.2d 32, 35 (1991). When the commission makes an award of benefits, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are conclusive. Marcus, 15 Va. App. at 551, 425 S.E.2d at 530.

Contrary to the position of employer, the evidence in the record, found credible by a majority of the commission, supported the finding, by clear and convincing evidence, that claimant's CTS arose out of and in the course of her employment and did not result from causes outside her employment.

The evidence established that Dr. Lannik, an orthopedic physician, was familiar with the nature of claimant's work through his review of her medical records. When he rendered his opinion regarding causation, he was aware that she had worked as a textile cutter in a job that "involve[d] cutting, taping, bagging and sealing type activities" and required "repetitive vigorous use of the hands." He opined that "[her] work activities as described with repetitive motion, particularly in the textile industry, [were] in fact *the* direct causal relation to her carpal tunnel syndrome problems." (Emphasis added). He also answered affirmatively a series of six questions that tracked the language of Code § 65.2-400(B), thereby confirming his opinion that claimant's CTS "ar[o]se out of" her work for employer as that that phrase is defined in Code § 65.2-400(B). The fact that Dr. Lannik did not treat or examine claimant and rendered his opinion based on a review of her records almost two years after her CTS surgery does not compel a different result. The commission, in its role as fact finder, was entitled to accept Dr. Lannik's opinion as credible and to conclude it provided clear and convincing evidence to prove claimant's CTS was caused by her work for employer.

Although claimant's treating physicians did not expressly opine in their treatment notes or any other written form contained in the record that her CTS was caused by her work, claimant testified without objection that both Dr. Kent Willyard and Dr. Gordon Theisz said her CTS was

- 6 -

caused by her work. See Crawley v. Commonwealth, 29 Va. App. 372, 376, 512 S.E.2d 169, 171 (1999) (holding hearsay evidence admitted without objection is part of record for purposes of appeal). Claimant's treatment records from these physicians and her direct testimony provided additional evidence supporting a finding of causation. Claimant testified that her work for employer was primarily on "the green machine," which "wrap[ped] and roll[ed] material." Her work on this machine required her to engage in repetitive movements with her hands, including smoothing, cutting, moving, and packing the material. She explained that "a lot of times that material messes up, and you have to repeatedly smooth [it] . . . with your hand." After working primarily on the green machine for a period of about a year, claimant developed a knot on her right hand as well as bilateral numbness and tingling. She testified that "[e]very time" she used the green machine, her hand bothered her: "[I]f I wasn't doing anything else, like if I was sitting somewhere else doing something else, my hand would be alright, but as soon as I [would] go to the green machine, that's when I started noticing the problem."

Claimant reported to Drs. Willyard and Theisz that her fingers bothered her "when she does her work," as well as at night. Both physicians made note of the repetitive nature of claimant's work and restricted her from engaging in repetitive movements with her right wrist while she was undergoing treatment. When their associate, Dr. Todd Batenhorst, saw claimant, he noted she "[h]ad been doing well on restricted duty" but that she experienced "increased numbness in [her] right hand and [carpal tunnel] distribution" when she was put back to work "[doing] several pulling, cutting, and repetitive movements." Dr. Wayne Luchetti, the orthopedic physician to whom Dr. Willyard referred claimant, specifically restricted her from using the green machine and then removed her from work completely until he performed her carpal tunnel surgery.

Finally, the record supports the commission's conclusion that claimant met her burden of proving her CTS did not result from causes outside of the employment. Claimant testified that she engaged in no hobbies or other activities outside of her work that required the repetitive motions she performed on the green machine at work. Dr. Lannik opined that claimant's CTS was "a disease to which [claimant] did not have substantial exposure outside the employment." "Although statements from claimant's [treating physicians] that her CTS did not result from any causes outside of the employment may have strengthened claimant's case, such statements were not critical to the commission's determination in light of claimant's own testimony." Miller, 38 Va. App. at 264, 563 S.E.2d at 379.

Claimant testified that she had not worked outside the home prior to being hired by employer and "had [never] had any problems like that with [her] right hand or wrist" prior to November 2000. She testified that she was involved in no hobbies outside of work other than socializing and being with friends and family. She said that the oldest of her four children performed most of the household chores in their apartment and that "[t]he only thing [she does] is cook." She expressly denied being "involved in any activities outside of work where [she] constantly [made] the same motion." This testimony supported the commission's findings that "claimant stated . . . she did not perform activities outside of work that involved repetitive hand motion" and that "[t]here is no evidence in the record to indicate that [claimant] developed [CTS] as a result of factors outside of her employment."

Our holding in Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 589 S.E.2d 465 (2003), relied upon by employer, neither compels nor supports a contrary result. In Steadman, the employer cross-examined the employee about what she did outside of work and what she told her doctor about those activities. Id. at 802, 589 S.E.2d at 468. The employee said she did not know what she told her doctor but that she "[didn't] do *any* activities outside of work." Id.

(emphasis added). In denying the employee's claim for benefits for CTS, a majority of the commission noted that "while the [employee] may not engage in any *organized* activities outside of work, it is clear that she does engage in day-to-day activities that may or may not have played a role in the development of her [CTS]." Id. (emphasis added). Absent specific testimony from the employee that her "day-to-day activities" did not involve repetitive motion of the same type she was required to engage in at work, the commission declined to award benefits. Id. On these facts, we upheld the commission's decision that the employee failed to present clear and convincing evidence that her disease was not caused by activities outside of her employment. Id. at 804-06, 589 S.E.2d at 469-70.

We distinguished the facts in Steadman from those in Miller, in which the commission awarded benefits and we found the evidence supported the inference that "'[Miller] . . . engaged in no hobbies or other activities outside her work *which involved this type of motion*.'" Steadman, 41 Va. App. at 804, 589 S.E.2d at 469 (quoting Miller, 38 Va. App. at 263-64, 563 S.E.2d at 379-80 (emphasis added)). In claimant's case, like in Miller, the evidence supported a finding that claimant was not "involved in any activities outside of work *where [she] constantly [made] the same motion*." (Emphasis added). This testimony was found credible by the commission and constituted clear and convincing evidence that claimant's CTS "did not result from causes outside the employment."

### III.

For these reasons, we hold credible evidence supports the commission's findings that claimant's CTS arose out of and in the course of her employment and did not result from causes outside the employment. Thus, we hold claimant's CTS was compensable, and we affirm the award of benefits.

Affirmed.