COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and McClanahan
Argued at Alexandria, Virginia


CARLOS LEUTHNER

MEMORANDUM OPINION[*] BY
v.        Record No. 2931-04-4          JUDGE D. ARTHUR KELSEY
                                        AUGUST 30, 2005
CANADA DRY POTOMAC CORPORATION AND
 CIGNA PROPERTY & CASUALTY INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Gregory J. Park (Park & Park, P.C., on brief), for appellant.

Erin E. Slusser (Semmes, Bowen & Semmes, P.C., on brief), for appellees.


Carlos Luethner appeals a denial of workers' compensation benefits for pain and numbness in his hands, an allegedly debilitating condition associated with carpal tunnel syndrome. Finding the decision to be within the commission's factfinding discretion, we affirm.

I.

We view the evidence on appeal in the light most favorable to Canada Dry Potomac Corporation ("Canada Dry"), the prevailing party before the commission. See Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004); Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003).

Since the early 1980s, Carlos Luethner has suffered from hemochromatosis and polycythemia, two blood disorders. Hemochromatosis can produce symptoms of joint pain and numbness. Luethner periodically received therapeutic phlebotomy treatments. Dr. Alberto

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Borges, a hematologist, treated Luethner's blood disorders in 2001 and 2002. Neither Dr. Borges nor any other physician has attributed either disorder to Luethner's work.

Luethner worked at Canada Dry for many years. His job included twisting off bottle caps from "low fill" soft drink bottles. In 2002, Luethner said he began experiencing pain and numbness in his hands. After examining Luethner, Dr. Borges issued a short written memo (addressed to "Whomever It May Concern") stating that Luethner's pain and numbness in his hands were "compatible with work-related carpel tunnel syndrome." Nothing in the medical record, however, suggests that Dr. Borges reviewed any nerve conduction studies or similar diagnostic tests to confirm this diagnosis. Nor did Dr. Borges's memo mention either of Luethner's blood disorders.

Luethner kept working until 2003, when Canada Dry laid off the plant's entire production line. Once unemployed, Luethner claimed to be permanently unemployable because of the pain and numbness in his hands. He filed a claim for compensation benefits and testified before a deputy commissioner. When questioned about activities outside of work, Luethner said he cleaned his apartment and car. He denied playing sports or going to a gym. When asked about gardening, Luethner said only, "I have my balcony." He claimed not to have any other non-work-related activities.

On review of a deputy commissioner's grant of benefits, the full commission reversed the award and denied the claim for benefits. Focusing on the paucity of information in Dr. Borges's report, the commission found Luethner's evidence did not exclude non-work-related causes. As to Luethner's non-work activities, the commission noted that Dr. Borges did not address Luethner's "outside activities" — calling into question whether he "was even aware of them when forming his opinion." The commission also found that Luethner's hemochromatosis

> may play a role in joint problems in the hands. Given this
> evidence, we would look to the medical opinions to clarify whether

and to what extent this condition contributed to the development of the claimant's carpal tunnel syndrome. However, Dr. Borges did not address this factor. . . . [And] there is no evidence that he considered the claimant's blood disease or the claimant's activities outside of work in forming his opinion on causation. Given the evidence of other potential causes of the claimant's condition, and the lack of medical evidence excluding causes outside of employment, we find that the claimant failed to meet his burden of proving that his carpal tunnel syndrome is a compensable ordinary disease of life.

Luethner now appeals to us, seeking an order directing the commission to grant his claim of benefits for carpal tunnel syndrome.

II.

Virginia law treats carpal tunnel syndrome not as an occupational disease, but one of several "ordinary diseases of life." Code § 65.2-400(C). "An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this title" if the disease "exists and arose out of and in the course of employment" *and* "did not result from causes outside of the employment." Code § 65.2-401; Fairfax County Fire & Rescue Dep't v. Mottram, 263 Va. 365, 374, 559 S.E.2d 698, 702-03 (2002). Each of the elements must be "established by clear and convincing evidence, (not a mere probability)." Code § 65.2-401; Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 802, 589 S.E.2d 465, 468 (2003).[1]

Luethner had the burden of proving — by clear and convincing evidence — that his allegedly debilitating condition was caused by his work activities and did *not* result from causes

---

[1] The clear-and-convincing burden of proof "erects a 'more stringent standard' than a mere 'preponderance of the evidence.'" Griffin v. Griffin, 41 Va. App. 77, 85, 581 S.E.2d 899, 903 (2003) (quoting Congdon v. Congdon, 40 Va. App. 255, 263, 578 S.E.2d 833, 837 (2003)). "Clear and convincing evidence involves 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" Id. (citation omitted); see also Commonwealth v. Allen, 269 Va. 262, 275, 609 S.E.2d 4, 13 (2005).

outside of his employment. Luethner argues on appeal he met both aspects of this burden, and thus, we should direct the commission to award benefits. Luethner's argument, however, amounts to no more than the assertion that because he made out a *prima facie* case for benefits, the commission had no choice but to accept it.[2]

A *prima facie* case is the threshold level of evidentiary proof sufficient to permit a factfinder to be persuaded of the proposition being asserted. Nothing in the concept of a *prima facie* case requires the factfinder to actually be persuaded. In logical terms, a *prima facie* case sets out a sufficient premise, but not a necessary one — a plausible understanding of the evidence that the factfinder can accept, but not one he must accept. See generally Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield, 42 Va. App. 264, 274-75, 590 S.E.2d 631, 637 (2004) (observing that the general use of the term "does not connote anything more than a mere evidentiary sufficiency" (citation omitted)).

The cases cited by Luethner demonstrate, as well as any, how this principle works. None of the cases Luethner cites involves an appellate reversal of the commission's denial of benefits coupled with an order directing the commission to grant benefits — which could occur only in situations where the evidence was so irrefutable that no rational factfinder could deny benefits. Luethner instead relies only on cases where the commission granted benefits, and we rejected the

_____

[2] At oral argument, Luethner also suggested that the commission should have deferred to its deputy's factual findings and that our appellate review may be invoked to enforce this deference. We disagree. Though the commission may defer to its deputies, nothing in the statute requires this deference as a matter of law. See Code § 65.2-705(A) (providing that the commission "shall review the evidence" and issue a "statement of the findings of fact"). And when the commission reviews a case, we must treat its decision as "conclusive and binding as to all questions of fact." Id. Thus, when the commission reverses a deputy on a factual issue, we must affirm if credible evidence supports the commission's explanation for making a contrary finding. See Turcios v. Holiday Inn Fair Oaks, 24 Va. App. 509, 515, 483 S.E.2d 502, 505 (1997); Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 127, 384 S.E.2d 333, 337 (1989).

- 4 -

employer's argument on appeal that the evidence failed to make out a *prima facie* case sufficient to support the award. See, e.g., Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 259-61, 563 S.E.2d 374, 377-78 (2002); Great E. Resort Corp. v. Gordon, 31 Va. App. 608, 614, 525 S.E.2d 55, 58 (2000); Nat'l Fruit Prod. Co. v. Staton, 28 Va. App. 650, 654, 507 S.E.2d 667, 669 (1998).[3]

The issue before us, however, is different. We need not decide whether a rational factfinder could have found Luethner's evidence persuasive (thus supporting an award), but rather whether the same evidence could be rejected as unpersuasive (thus supporting a denial). In most cases, as in this one, the answer to that question comes from the standard of appellate review. "By statute, an award of the commission 'shall be conclusive and binding as to all questions of fact.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50, 601 S.E.2d 693, 697 (2004) (quoting Code § 65.2-706(A)). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," id. (quoting Cent. Va. Obstetrics & Gynecology Assocs., 42 Va. App. at 279, 590 S.E.2d at 639), "one that we scrupulously obey both in principle and in practice when reviewing questions of causation," id. (citations omitted). See also Tex Tech Indus., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004) ("The commission's determination regarding causation is a finding of fact.").

In Luethner's case, the evidence did not persuade the commission that his allegedly debilitating condition "did not result from causes outside of the employment." Code § 65.2-401(1). We find nothing irrational about the commission's factual finding on this topic.

---

[3] See also Tex Tech Indus., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004). The only case falling outside this pattern, Lanning v. Va. Dept. of Transp., 37 Va. App. 701, 709, 561 S.E.2d 33, 37 (2002), reversed a denial of benefits because the commission based it on some, but not all, of the evidence. Even in that scenario, we did not order the commission to grant the claim for benefits. We merely remanded the case to the commission to consider the previously neglected evidence.

Though he had a clear-and-convincing burden of proof (one of the highest possible in a civil case), Luethner offered no medical evidence to negate the possibility that his hemochromatosis caused the pain and numbness he experienced, a recognized symptom of this type of blood disorder, or that his hemochromatosis played a role in the development of his carpel tunnel syndrome. Dr. Borges's cursory statement that Luethner's symptoms were "compatible" with carpal tunnel syndrome did little to erase the commission's understandable doubt on this issue.

Given Dr. Borges's specific mention of carpal tunnel syndrome, Luethner argues, the doctor's conspicuous omission of hemochromatosis in his memo necessarily means he ruled it out as a potential cause of Luethner's symptoms. That conclusion could well be true. But it is also possible the doctor did not have enough diagnostic information to conclude with confidence the blood disorder was not a causative agent. It is not for us to decide which of the two inferences is more reliable. We ask only whether credible evidence would permit a rational factfinder to accept either one. If so, the decision belongs entirely to the commission.

Finally, the commission questioned Luethner's testimony about his non-work-related activities (which the commission said he "downplayed") and the possible role they may have had in causing Luethner's condition. On this issue, the commission discounted Luethner's testimony about non-work activities as uninformative because Dr. Borges did not address them in his report. We agree with Luethner that medical evidence is not invariably required. But the inverse is equally true: Non-medical evidence need not be invariably accepted at face value either. Here again, the persuasive weight assigned to the evidence rests solely with the factfinder.

III.

Finding credible evidence supports the commission's decision on causation, we affirm its denial of benefits.

Affirmed.