COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Kelsey and Senior Judge Hodges


ROBIN M. COTTRELL

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1161-05-3                          PER CURIAM
                                                    SEPTEMBER 13, 2005

DeROYAL INDUSTRIES, INC. AND
  TRAVELERS INDEMNITY COMPANY OF AMERICA


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Robert B. Hines, II; Hines Law Office, PLC, on brief), for
            appellant.  Appellant submitting on brief.

            (Anne L. Musgrove; Penn, Stuart & Eskridge, on brief), for
            appellees.  Appellees submitting on brief.


      Robin M. Cottrell (claimant) appeals a decision of the Workers' Compensation

Commission denying her benefits under the Workers' Compensation Act.  The commission held

that claimant failed to prove by clear and convincing evidence that her left carpal tunnel

syndrome (CTS) did not result from causes outside her employment as required by Code

§ 65.2-401.  Because we conclude the decision was within the commission's fact-finding

discretion, we affirm.

I.

BACKGROUND

      On appeal, we view the evidence in the light most favorable to DeRoyal Industries, Inc.

(employer), the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211,

212, 390 S.E.2d 788, 788 (1990).

─────────────────────

      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant worked for employer for eleven years up until November 25, 2003. In her job, she assembled and packaged medical products by hand. Claimant had production goals. In September 2003, claimant began experiencing numbness in her left fingers. In November 2003, claimant sought medical treatment from Dr. Ronald S. Dubin. On November 25, 2003, Dr. Dubin told claimant that she had CTS. According to claimant, Dr. Dubin told her that her CTS was related to her work with employer, and he released her to return to work with restrictions on December 4, 2003.

Claimant testified that she occasionally plays the piano, "[m]aybe ten to fifteen minutes maybe once a week, maybe once a month." She indicated that she is also a back-up piano player at church, substituting for the regular piano player when necessary. She stated she "may play once a month [at church], and then [she] may go two, three, four months and not play again." When she plays the piano at church, she does so for ten to twenty minutes. In her deposition testimony, claimant stated that she experiences pain in her hands when she plays the piano.[1] She did not recall discussing her piano playing with Dr. Dubin. She also indicated that she did laundry and vacuums "maybe once every two weeks." Claimant admitted that she did not discuss with Dr. Dubin any of the activities she engaged in outside of her employment. Claimant acknowledged that after she was diagnosed with right CTS in January 2001, she at times used her left hand more that her right hand at work.

The medical records show that Dr. Dubin evaluated claimant on January 10, 2001. He diagnosed right CTS due to overuse syndrome. On January 24, 2001, he opined that claimant's mild right CTS was "probably related to the repetitive type of work that she does at DeRoyal where she does a lot of twisting and pulling on her right hand." Dr. Dubin treated claimant's right CTS through August 28, 2001. At that time, her condition had improved and she was

_____

[1] The deputy commissioner made claimant's deposition part of the evidentiary record.

working. Dr. Dubin also saw claimant on April 8, 2002 and May 13, 2003. At that time, claimant was doing well with medication and was continuing to work.

On November 11, 2003, claimant returned to Dr. Dubin, complaining of similar symptoms in her left and right hands. Claimant told Dr. Dubin that "with activity, her right and left hands get numb and it goes into all her fingers." Dr. Dubin ordered an EMG/NCV, which showed severe bilateral CTS, worse on the left. On November 25, 2003, Dr. Dubin opined that claimant's CTS "is indeed a work related, repetitive type injury." Dr. Dubin recommended that claimant stop working for employer and advised her to undergo surgery on both wrists. He also anticipated that she would no longer be able to engage in repetitive-type employment activities, and excused her from work. On December 4, 2003, Dr. Dubin opined that claimant's injury "is consistent with a workers' compensation injury with repetitive use of her hands." On February 12, 2004, Dr. Dubin reiterated his opinion that the claimant was restricted from performing any repetitive-type work with either hand. He also noted that he believed claimant required surgery, "but she still refuses."

Based upon this record, the deputy commissioner found as follows:

> Claimant's testimony is that she did not recall discussing with Dr. Dubin any of her non-work activities. Moreover, in this case, claimant had a previous award for [CTS] involving the right hand, and there is no indication from Dr. Dubin that he discussed with claimant or that the issue was ever raised as to whether or not the condition involving the left wrist was a compensable consequence of the [CTS] in claimant's right wrist. Therefore, there are at least two other possible causes of the [CTS] in claimant's left wrist. As Dr. Dubin was not asked to comment upon those, it is not apparent what his opinions would have been.
>
> *    *    *    *    *    *    *
>
> . . . [W]e find that claimant has contracted [CTS] in both the right and left wrist; however, as the claim before us deals only with the left wrist, our opinion is limited only to the left wrist.

- 3 -

However, having said that, we do not have difficulty stating that claimant's left wrist [CTS] resulted as a consequence of her employment with this employer; however as we have no medical evidence to exclude other causes, and as claimant has identified as least two possible causes as set forth above, we are constrained to conclude that the evidence fails to meet the clear and convincing, and more than a mere probability standard that claimant's left wrist [CTS] resulted from her employment with this employer and not from causes outside of the employment. That being the case, this claim must be, and hereby, is denied.

The majority of the commission found "no error" in the deputy commissioner's decision and affirmed it, finding as follows:

The claimant has the burden to prove all elements of Code § 65.2-401, including that the [CTS] did not result from causes outside her employment. Steadman v. Liberty Fabrics, 41 Va. App. 796, 589 S.E.2d 465 (2003). It is clear from the claimant's testimony that she regularly engages in some outside activities – she plays the piano for her church at least once a month for an unknown length of time, she also plays piano at home for about fifteen minutes once or twice a month at least, and she regularly does some household work involving repetitive use of her hands. The claimant admitted that she did not discuss her outside activities with Dr. Dubin. He did not know of her activities or the fact that the claimant's numbness persisted, even after she stopped working.

While one may speculate that these activities are not of the type or duration to cause [CTS], the law places that burden on the claimant to prove her case by evidence. We read Tex Tech Industries, Inc. v. Ellis, 44 Va. App. 497, 605 S.E.2d 759 (2004), as holding that the claimant is still required to obtain medical evidence negating non-work activities as a cause of her disease if the non-work activities are of the character that could cause the disease. There is no evidence that Dr. Dubin addressed these outside activities or was even aware of them when forming his opinion that claimant's [CTS] is work-related.

II.

STANDARD OF REVIEW

By statute, an award of the commission "shall be conclusive and binding as to all questions of fact." "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," one that we scrupulously obey both in

- 4 -

principle and in practice when reviewing questions of causation . . . .

Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50, 601 S.E.2d 693, 697 (2004); see also Tex Tech, 44 Va. App. at 504, 605 S.E.2d at 762 ("The commission's determination regarding causation is a finding of fact.").

## III.

## ANALYSIS

Virginia law treats carpal tunnel syndrome not as an occupational disease, but one of several "ordinary diseases of life." Code § 65.2-400(C). "An ordinary disease of life [to which the general public is exposed outside of the employment] may be treated as an occupational disease" if the disease exists and "'arose out of and in the course of employment . . . and did not result from causes outside of the employment.'" Fairfax County Fire & Rescue Dep't v. Mottram, 263 Va. 365, 374, 559 S.E.2d 698, 702 (2002) (quoting Code § 65.2-401). Each of the elements must be "'established by clear and convincing evidence, (not a mere probability).'" Steadman, 41 Va. App. at 802, 589 S.E.2d at 468 (quoting Code § 65.2-401).

Evidence is clear and convincing when it produces in the fact finder "'a firm belief or conviction as to the allegations sought to be established. It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.'" Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

In this case, claimant bore the burden of proving – by clear and convincing evidence – that her left CTS was (1) caused by her work activities performed for employer; and (2) did not result from causes outside her employment. The commission found that claimant sustained her

- 5 -

burden of proof as to the first prong, but failed to sustain her burden of proof as to the second prong.

On appeal, claimant argues that her testimony describing the nature and duration of her non-employment activities "precluded non-employment activities which would lead to the condition for which she seeks benefits." She further argues that "[a]lthough Dr. Dubin did not address non-employment factors in his medical records, such evidence is not required when [a] claimant's testimony sufficiently addresses the issue." Relying upon her testimony and Tex Tech, claimant asserts that she met her burden of proving by clear and convincing evidence that her left CTS was not the result of causes outside her employment, stating that "[t]he nature and duration of these activities clearly do not equal the nature and duration of the repetitive use of her hands in her employment." Therefore, she asserts that this Court must overrule the commission's denial of benefits. Claimant's argument, however, amounts to no more than the assertion that because she made out a *prima facie* case for benefits, the commission had no choice but to accept it.

A *prima facie* case is the threshold level of evidentiary proof sufficient to permit a fact finder to be persuaded of the proposition being asserted. However, nothing in the concept of a *prima facie* case requires the fact finder to be actually persuaded. In logical terms, a *prima facie* case sets out a sufficient premise, but not a necessary one – a plausible understanding of the evidence that the fact finder can accept, but not one he must accept. See generally Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield, 42 Va. App. 264, 274-75, 590 S.E.2d 631, 637 (2004) (observing that the general use of the term "does not connote anything more than a mere evidentiary sufficiency"). Once a claimant has put forth a *prima facie* case, he or she must then meet the burden of persuading the fact finder that his or her evidence meets the applicable

burden of proof – in this case, clear and convincing evidence that claimant's left CTS was caused by her work activities with employer and did not result from causes outside her employment.

In that the commission acts as both an appellate tribunal (deferring to the deputy commissioner's fact-finding when it chooses to do so) and as a fact finder (deciding fact issues *de novo* when it chooses to do so), the distinction between legal sufficiency, i.e., setting forth a *prima facie* case, and evidentiary persuasiveness, i.e., satisfying a fact finder that the evidence meets the applicable burden of proof, at times, is not always self-evident from the face of the commission's opinion. Thus, we examine the language used by the commission in its opinion when conducting appellate review.

Our review of the commission's opinion reveals that while claimant's evidence may have established a *prima* facie case supporting an award, the commission, as fact finder, was not persuaded by that evidence that claimant's left CTS "did not result from causes outside the employment," Code § 65.2-401(1), due to the lack of medical evidence addressing that issue. We find nothing irrational about the commission's factual finding on this topic. Though claimant had a clear and convincing burden of proof (one of the highest possible in a civil case), she offered no medical evidence to negate the possibility that her participation in certain activities outside her employment played a role in the development and/or cause of her left CTS. Dr. Dubin's general statements that claimant's symptoms were of the type caused by repetitive work activities, was understandably not sufficient to satisfy the commission on this particular issue.

In our role as an appellate court, it is not for us to decide whether claimant's testimony, coupled with Dr. Dubin's opinions, proved or did not prove by clear and convincing evidence that her left CTS was not caused by activities outside her employment. Rather, where, as here, the commission's decision rests upon its sufficiency finding, we ask only whether there is

credible evidence in the record to permit a rational fact finder to accept either inference. If so, the decision belongs entirely to the commission.

Claimant's reliance on Tex Tech in asserting that she met her burden of proof is misplaced. Claimant argues that under Tex Tech, because she provided testimony describing the nature and duration of her non-employment activities, coupled with Dr. Dubin's affirmative statements that her CTS was a work-related repetitive type injury, she met her burden of providing clear and convincing evidence that her CTS was not caused by activities outside her employment. However, claimant fails to recognize that the commission, in its role as fact finder, discounted her testimony about her non-work activities, because Dr. Dubin was either unaware of those activities or did not address them in his reports. We agree with claimant that medical evidence is not invariably required in order to sustain the burden of proving by clear and convincing evidence that an ordinary disease of life was not caused by activities outside a claimant's employment. See Steadman, 41 Va. App. at 805, 589 S.E.2d at 469 (recognizing that "[w]hile medical evidence based on a physician's knowledge of a claimant's outside employment activities *may* establish a claimant's burden by clear and convincing evidence, '[a] finding of causation need not be based exclusively on medical evidence" (emphasis added)); see also Tex Tech, 44 Va. App. at 504, 605 S.E.2d at 762 ("A finding of causation need not be based exclusively on medical evidence, and *a claimant is not required to produce a physician's medical opinion in order to establish causation*." (emphasis in original)). But the inverse is equally true: non-medical evidence need not be invariably accepted at face value either. See Steadman, 41 Va. App. at 805-06, 589 S.E.2d at 469-70. Here again, the persuasive weight assigned to the evidence rests solely with the fact finder.

Finding credible evidence supports the commission's decision on causation, we affirm its denial of benefits.

Affirmed.