COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


GWALTNEY OF PORTSMOUTH AND
  FIDELITY & GUARANTY INSURANCE COMPANY
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0661-06-1                    JUDGE ROBERT P. FRANK
                                                      OCTOBER 31, 2006
SHELIA PELHAM


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            J. Derek Turrietta (Jesse B. Gordon; Stackhouse, Nexsen & Turrietta,
            PLLC, on brief), for appellants.

            John H. Klein (Charlene Morring; Montagna Klein Camden, LLP, on
            brief), for appellee.


        Gwaltney of Portsmouth and Fidelity & Guaranty Insurance Company (collectively

"employer") appeal a decision of the Workers' Compensation Commission awarding benefits to

employee, Shelia Pelham ("claimant").  On appeal, employer contends claimant failed to prove

by clear and convincing evidence that her carpal tunnel syndrome (CTS) was a compensable

ordinary disease of life under Code § 65.2-401 because the medical evidence failed to prove a

sufficient causal link between claimant's CTS and her employment.  We hold that the evidence

as a whole, including claimant's testimony, supported the commission's finding of causation.

Therefore, we affirm the award.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

Claimant was employed by Gwaltney of Portsmouth as a laborer for approximately 11 years. She described her various duties as a scaler, coupler, packer, and a palletizer. She testified that "you had to do all of them with your hands" and that prior to her employment with employer, she never had any problem with her hands.

As a scaler, claimant would weigh the packages of prepared meat to insure the correct weight. If any one package was not the correct weight, she would adjust the contents to achieve the proper weight and then put the package back on the conveyor belt. Claimant further testified her hands first began bothering her in 2002. She would experience sharp pains in her hands, and her hands would become numb. The pain then began "shooting up" in the middle of her right hand. Claimant indicated in a Vicare (insurance) report dated September 18, 2002 that the injury occurred over a long period of time while working on the job. In the Employer's First Report of Accident, claimant told employer that continuous use of her hands as a scaler resulted in bilateral CTS.

In August 2002, Dr. Hamid requested that claimant complete an orthopedic initial history survey. Claimant was asked to evaluate when the onset of her injury occurred, and in response she answered that there was a gradual onset "because of the work that I do on the job which is any number of things." When asked how her job caused this problem, she answered "by using my hands constantly and at high [sic] of speed."

Claimant was treated and evaluated by Dr. Kells, and was diagnosed as having CTS. In Dr. Kells' office note dated August 28, 2002, he indicated claimant works at Gwaltney, "using repetitive motion with her hands and has done so for 11 years." In his notes dated November 5, 2002, Dr. Kells observed, "she states she did not have [CTS] prior to working in repetitive

situation like she does now as a scaler." The doctor opined, "it is my feeling because of the repetitive motion that she does this is a work related issue." On May 9, 2003, Dr. Kells indicated claimant cannot work "at this point in time."

At the deputy's first hearing, claimant testified that she knew of no problem with her thyroid, that she did not have diabetes, that in 2002 she was not pregnant, that she had no hobbies such as tennis or golf where she used her hands to grip, and that she did not play any musical instruments nor gardened. She also did not have any hobbies involving handwork such as knitting or crocheting. She only spent an hour a week housecleaning because her family assisted her with housecleaning and the care of her child.

Initially, a deputy commissioner opined that claimant failed to exclude other causes for the CTS outside her employment. On review, the commission reversed the deputy, finding claimant had met her burden of proof. On remand, the deputy awarded claimant benefits. In its review opinion dated February 14, 2006, the commission affirmed the deputy's award, stating:

> Here, the claimant testified that she did not begin to notice any problems with her hands until after she started working for the employer and denied suffering from types of diseases which are known to sometimes cause carpal tunnel syndrome. She also explained that she does not use her hands extensively outside of work and specifically denied engaging in hobbies such as tennis, golf, playing a musical instrument, gardening or activities involving the use of a needle (such as crocheting or knitting). This testimony, together with Dr. Kells' opinion that the claimant's condition was "work-related," satisfies the claimant's burden of proving a compensable ordinary disease of life.

This appeal follows.

ANALYSIS

On appeal, employer essentially challenges the sufficiency of the evidence. It contends

claimant failed to prove, by clear and convincing evidence, a compensable ordinary disease of

life pursuant to Code § 65.2-401,[1] arguing that Dr. Kells' causation opinion is insufficient.[2]

"The commission's determination regarding causation is a finding of fact. A finding of

causation need not be based exclusively on medical evidence." Farmington Country Club, Inc.

v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (citations omitted). A claimant is

not required to produce a physician's medical opinion in order to establish causation. Tex Tech

Industries, Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004). "The testimony of a

claimant may also be considered in determining causation, especially where the medical

---

[1] Code § 65.2-401 states:

> An ordinary disease of life to which the general public is exposed
> outside of the employment may be treated as an occupational
> disease for purposes of this title if each of the following elements
> is established by clear and convincing evidence, (not a mere
> probability):
>
> 1. That the disease exists and arose out of and in the course of
>    employment as provided in § 65.2-400 with respect to
>    occupational diseases and did not result from causes outside of
>    the employment, and
> 2. That one of the following exists:
>     a. It follows as an incident of occupational disease as defined
>        in this title; or
>     b. It is an infectious or contagious disease contracted in the
>        course of one's employment in a hospital or sanitarium or
>        laboratory or nursing home as defined in § 32.1-123, or
>        while otherwise engaged in the direct delivery of health
>        care, or in the course of employment as emergency rescue
>        personnel and those volunteer emergency rescue personnel
>        referred to in § 65.2-101; or
>     c. It is characteristic of the employment and was caused by
>        conditions peculiar to such employment.

[2] Employer, in its brief and at oral argument, did not contend claimant failed to meet her
burden to prove her CTS did not result from causes outside of employment.

testimony is inconclusive." Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996). Similarly, where the diagnosis is clear but the medical evidence does not provide a sufficient causal link between the ailment and the employment, the commission may rely on the testimony of the claimant to establish this link. Id.

> In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are binding and conclusive upon us.

Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260-61, 563 S.E.2d 374, 378 (2002) (other citations omitted).

"Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).

Evidence is clear and convincing when it produces in the fact finder "'a firm belief or conviction as to the allegations sought to be established. It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.'" Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)) (emphasis in original).

To support its argument, employer focuses on Dr. Kells' statement, "it is my feeling because of the repetitive motion that she does this is a work related issue." Employer maintains this statement is a "bare assertion" of causation; that his "feeling," is not an opinion within a

"reasonable degree of medical certainty,"[3] and "work-related" is not an opinion of causation. Employer argues "work-related" could mean that work simply aggravated, exacerbated or merely contributed to claimant's CTS.

We addressed this very issue in Lanning v. Virginia Department of Transportation, 37 Va. App. 701, 561 S.E.2d 33 (2002). The physician there opined, "I think her pain is related to her on the job injury . . . ." Id. at 707, 561 S.E.2d at 36. We reversed the commissioner's determination that claimant failed to prove causation because the physician used the word "related." Id. at 709, 561 S.E.2d at 37.

We held:

> We agree with the commission that a bare assertion that a condition is "work-related" does not meet the "clear and convincing" standard. The fact that a condition is "related to" the workplace is not proof by itself of causation. However, the evidence here includes more than a bald assertion of a relationship between claimant's work and carpal tunnel syndrome.
>
> While he employed the words, "related" and "related back," Dr. Burns explained he believed claimant's present problem with carpal tunnel syndrome was caused by her original injury at the toll booth. The "injury" became worse due to her constant use of the computer in her new position. He did not merely assert that the injury was related to her job; he explained how her prior and present work conditions resulted in the injury. Additionally, no evidence proved claimant had carpal tunnel syndrome or experienced symptoms related to that condition prior to her work for employer, and the evidence proved no causes outside her employment contributed to that condition. In this context, Dr. Burns' opinion could be considered clear and convincing evidence that claimant's condition was caused by her work.
>
> "We will not substitute form over substance by requiring a physician to use magic words . . . when the record is void of any evidence of non-employment factors responsible for [the condition]." Island Creek Coal Co. v. Breeding, 6 Va. App. 1,

---

[3] We rejected this identical argument in Commonwealth v. Bakke, 46 Va. App. 508, 527-28, 620 S.E.2d 107, 116 (2005). We noted the General Assembly, in 1997, amended Code § 65.2-401 "to delete the requirement to prove the evidence to a reasonable degree of medical certainty."

11-12, 365 S.E.2d 782, 788 (1988). As Commissioner Diamond said in the dissent, "[t]he Commission should not require the use of talismanic words to find causation."

Lanning, 37 Va. App. at 708, 561 S.E.2d at 36-37.

As in Lanning, Dr. Kells made more than a "bare assertion" of causation. According to his office notes, the doctor knew claimant had engaged in repetitive motion with her hands at Gwaltney. He knew claimant had no such medical problems prior to working for Gwaltney. Based on this, in Dr. Kells' opinion the CTS was "work-related."

We also must consider the fact that claimant related her CTS to her repetitive work at Gwaltney. Claimant testified her job duties involved working as a scaler. She indicated the continuous use of her hands as a scaler resulted in CTS. Claimant further testified she had had no such problem prior to her employment with Gwaltney.

The evidence established that Dr. Kells was familiar with the requirements of claimant's job, including the repetitive nature of her work. Additionally, claimant further established causation. Dr. Kells' opinion and claimant's statements and testimony constitute credible evidence to support the commission's finding that claimant proved causation by clear and convincing evidence.

For the reasons stated, we affirm the commission's decision.

Affirmed.