COURT OF APPEALS OF VIRGINIA

Present:   Judges Haley, Petty and Powell
Argued at Salem, Virginia


CHARLES WRIGHT STRICKLAND, SR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0682-08-3                  JUDGE JAMES W. HALEY, JR.
                                                        FEBRUARY 17, 2009

JONES BROTHERS, INC. AND
  ZURICH AMERICAN INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Philip B. Baker (G. Blair Sanzone; Sanzone & Baker, P.C., on brief),
            for appellant.

            Robert M. McAdam (Brooke Anne C. Hunter; Patrick S. Bolling;
            Kalbaugh, Pfund & Messersmith, on brief) for appellees.


                                    INTRODUCTION

        Charles Wright Strickland, Sr. maintains the Workers' Compensation Commission erred

in concluding he failed to market his residual work capacity.  Finding the commission's

conclusion supported by the evidence, we affirm.

                                        FACTS

                                          I.

        Strickland, now aged 69, worked as a foreman/supervisor for Jones Brothers, Inc., which

installed gas, water, and sewer pipelines.  He testified that in that position he "just told [the work

crews] what to do."  With respect to actual physical labor, he would "help them out a little bit"

by going to get a piece of equipment from the supply room, but "ninety-nine percent of the time I

had somebody help me."  He did no lifting other than this occasional loading or unloading of

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

equipment. Primarily, he would "stand there two hours and look at" the crews working or he would be "in my pickup truck riding . . . [or] sit there in my truck and look at them." He acknowledged his position required "a lot of paperwork."

The parties stipulate that Strickland sustained an injury by accident to his lower back on August 18, 2003. Prior to that date, though, Strickland had had "sharp pains in [his] back" which required him "to be careful when I picked up anything." Those pains, however, did not preclude his performance as a foreman/supervisor.

Dr. Scot E. Reeg treated Strickland and released him to "light duty" on December 2, 2003, with restrictions against "lifting, bending, twisting, climbing, pushing or pulling" though he could travel "45 minutes to an hour to any particular job site." On February 16, 2004, Dr. Reeg released Strickland to "his regular work." He was discharged with a 3% permanent partial disability rating to his back. Strickland requested a second opinion and was seen by Dr. David C. Miller on September 1, 2004, who concluded that Strickland "at this time can only do sedentary work" and opined there was a 5% disability rating. Since April 2005, Dr. Thurman Whitted, Jr. has treated Strickland for relief of pain. In response to an April 20, 2006 questionnaire, Dr. Whitted stated that, although he had not prior thereto suggested any work restrictions, he "recommended" Strickland could be restricted as follows: "no prolonged bending, stooping, squatting, and no lifting greater than 25 lbs." By deposition of January 4, 2007, Dr. Whitted opined those restrictions were "reasonable." He further stated he had no restrictions on Strickland driving, but suggested Strickland not remain seated without a break for longer than 30 to 60 minutes.

The parties stipulated that Strickland has been restricted to light duty since September 1, 2004. That stipulation reflects the restrictions suggested by both Dr. Reeg (initially) and Dr. Miller, and "recommended" by Dr. Whitted in 2006 and deemed "reasonable" by him in

2007. As noted above, Strickland has a 3-5% permanent partial disability rating for his back. During a deposition on November 3, 2006, Strickland acknowledged he has never received any disability rating as to his legs.

Strickland is diabetic and wears an insulin pump. At Dr. Whitted's recommendation, Strickland takes various medications, including Neurontin, Percocet, and Endocet, for pain in his legs. At night he also uses a TENS unit. He receives Social Security but is not on disability Social Security.

The issue as to whether Strickland had made reasonable efforts to market his residual work capacity has been divided by the parties into two discrete time frames: first, from September 1, 2004, to November 3, 2006, when Strickland's deposition was taken, and second, from November 3, 2006, to January 18, 2007, when the hearing was held before a deputy commissioner.

## II.

Strickland lives in Snow Hill, North Carolina. Within a 30 to 45 minute drive are the towns of Goldsboro, Greenville, and Kinston. Raleigh is an hour and one-half away. Strickland completed the eighth grade, can read and write, obtained his GED in 1959, and possesses a valid driver's license. He worked on a farm until age sixteen, and spent four years in the military. He described his activities in the military as "classified" and declined to reveal their nature. He has worked in construction for fifty years. He has also owned and cared for horses for almost fifty years, and presently maintains seven or eight at his small farm. As noted, he last worked as supervisor/foreman with the duties and responsibilities outlined above. For twenty-six weeks, from April 2004 onwards, he collected unemployment compensation from Virginia.

Between February 2004 and November 3, 2006, the date of his deposition, Strickland testified he had had twelve interviews. He presented two lists with the names of twenty-eight

companies (though a substantial number of the names were duplicated) he said he contacted either in person or by phone. The list does not contain dates, times, telephone numbers, addresses, or potential work available, as to any company. Strickland acknowledged that four companies were contacted "this week," that is, during the week preceding his deposition. He admitted that all companies named were construction companies ("That's all I've ever done") and that he would contact them without knowing whether they had any job openings. He acknowledged that he could drive for one-half hour without stopping, and drives to meet a friend at a restaurant in Kinston, N.C., thirteen miles from Snow Hill, once a week. He stated he had been offered jobs, but "[w]hen they find out I got back problems the interview is almost over right there." No evidence was offered that he had applied anywhere for any work consistent with the restrictions to which the stipulation applied.

Strickland next testified at the hearing before the deputy commissioner on January 18, 2007. He introduced into evidence four handwritten lists on employee contacts containing thrity-six firms. Again, no documentation or notes concerning those contacts were set forth on the list. Moreover, at least fifteen of those so named were the same as those listed during the November 3, 2006 deposition. ("There's nothing much different . . . some . . . on that . . . list is a repeat of people I contact[ed].")

He has not seen any doctor except Dr. Whitted since April 2005 and acknowledged that this physician imposed no formal restrictions. He admitted he has "the people skills and the knowledge . . . to do supervisory roles and explain to people how to do the job." He did not, in response to a question, apply for work at any trade school. Again, with several exceptions, the vast majority of his contacts were going to construction job sites or having conversations with individuals he knows in the construction industry.

As he related: "I . . . tell them . . . I have back problems and stuff and everything, so--- they said that kind of shuts the door." He tells them: "I wasn't supposed to pick up anything heavy or stoop or bend a whole lot or stand a whole lot." He has not registered with the Virginia Employment Commission since his unemployment benefits ran out.

The following exchange during the hearing before the deputy commissioner crystallizes that testimony and the testimony at the earlier deposition.

> Q. [O]nce you get into the interview and start talking to them about your restrictions and they talk to you about the job duties, you've never been on an interview where they actually meet up, are compatible, isn't that correct?
>
> A. That's right. Yes.

### III.

The May 3, 2007 decision by the deputy commissioner included the following evaluation: "Careful observation and attention to Strickland's behavior, conduct, and capabilities as a witness clearly revealed language and reasoning skills far above the level of someone who, as a regular student, never reached high school."

The deputy wrote: Strickland "sought employment only at construction or related firms where there was little, if any, chance of his employment." Even though his "physical work requirements [as a foreman/supervisor] were minimal . . . according to his testimony, each of the firms he contacted backed away from any employment offer after he advised them of his 'restrictions.'" Moreover, "Strickland stated that he had been offered jobs until he disclosed his limitations. However, he did not identify either the positions allegedly offered or the firms themselves." The deputy further noted that: "There is also no evidence that other jobs [besides construction] were not available."

In finding that Strickland had not met his burden of establishing that he had made reasonable efforts to market his residual work capacity since September 1, 2004, to date, the

deputy wrote: "the hard evidence is that he applied only for positions he, himself, thought he could not perform."

Strickland appealed to the full commission. By decision of February 19, 2008, the commission affirmed the deputy, with one commissioner dissenting. Relying on White v. Redman Corp., 41 Va. App. 287, 584 S.E.2d 462 (2003), and National Linen Service v. McGuinn, 8 Va. App. 267, 380 S.E.2d 31 (1989), among others, in its analysis, the majority wrote:

> However, after careful Review, it appears that the claimant's restrictions, or what claimant thought his restrictions were, were not documented by his treating physician.
>
>       *     *     *     *     *     *     *
>
> [H]e is able to work in a sedentary job. The description of his pre-injury job is essentially sedentary. . . . [His job search] lacked documentation . . . and his testimony . . . showed he failed to market outside his experience adequately and that he did not explore other options.

The commission summarized: "His search was self-limited to certain employers that he contacted repeatedly without success."

## ANALYSIS

"A partially incapacitated employee . . . is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work." White, 41 Va. App. at 292, 584 S.E.2d at 464. "[T]he employee '[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity.'" Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 578 (2008) (quoting Wash. Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985)).

What constitutes a "reasonable effort" in this context must be determined by consideration of "all of the facts and surrounding circumstances" applicable to each individual case. Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). This Court has enumerated the following factors for that consideration:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv., 8 Va. App. at 272, 380 S.E.2d at 34. These criteria remain relevant for analytical purposes. See Va. Natural Gas, Inc. v. Tennessee, 50 Va. App. 270, 282-85, 649 S.E.2d 206, 213-14 (2007); Metro. Wash. Airports v. Lusby, 41 Va. App. 300, 316-17, 585 S.E.2d 318, 326 (2003).

"'The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact-finding judgment of the commission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal.'" Va. Natural Gas, Inc., 50 Va. App. at 283, 649 S.E.2d at 213 (quoting Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000)). See also Ford Motor Co., 275 Va. at 88, 654 S.E.2d at 578.

A decision by the commission is "conclusive and binding as to all questions of fact." Code § 65.2-706(A); see also Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). Thus, under our standard of review, "'[f]actual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal.'" Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339, 641 S.E.2d 129, 132 (2007) (quoting S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993)). In

- 7 -

addition, "[w]here reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "In determining whether credible evidence exists to support the commission's findings of fact, '[we do] not retry the facts, reweigh . . . the evidence, or make [our] determination of the credibility of the witnesses.'" Tex Tech Indus., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)). Finally, in reviewing a decision by the commission, we view the evidence in the light most favorable to the prevailing party below, here the employer, Jones Brothers, Inc. Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d 566, 571 (2007).

We address three of the factors set forth in National Linen Serv. First, the extent of claimant's disability was self-defined, as his testimony reveals. While it is true Dr. Reeg, initially, and Dr. Miller, subsequently, limited claimant to "light duty" or "sedentary work," the commission nonetheless found that "claimant's restrictions . . . were not documented by his treating physician," Dr.Whitted. He had not visited any physician but Dr. Whitted since April 2005. Second, as the commission noted, his job search, as set forth on claimant's notes, "lacked documentation" — being simply the names of construction companies, often repeated. Third, in National Linen Serv., we adopted language from Dunkin Donuts of America, Inc. v. Watson, 366 A.2d 1121 (Me. 1976) wherein the Supreme Court of Maine held that the employee must engage "in a *good faith effort* to obtain work." 8 Va. App. at 271, 380 S.E.2d at 34. Here, the evidence demonstrates a lack of good faith effort. The claimant would approach construction companies and advise them of his "restrictions." As claimant acknowledged, he never had an interview where the job duties were compatible with his "restrictions." As the deputy commissioner wrote: "the hard evidence is that he applied for positions he, himself, thought he could not perform."

Applying the standard of review set forth above, we conclude that the evidence supports the fact found by the commission — that claimant failed to show he made a reasonable effort to market his remaining work capacity. Accordingly, the decision of the commission is affirmed.

<u>Affirmed.</u>